975 So.2d 81 (2008)
Clifton STRAUGHTER and Randall Harris, Plaintiffs-Appellants,
v.
Vince HODNETT dba Banana Bob's Cantina, et al., Defendants-Appellees.
Clifton Straughter and Randall Harris, Plaintiffs-Appellants,
v.
Colony Insurance Company, Defendant-Appellee.
Nos. 42,827-CA, 42,870-CA.
Court of Appeal of Louisiana, Second Circuit.
January 9, 2008.
Rehearing Denied February 7, 2008.
*84 Anthony J. Bruscato, Monroe, for Plaintiffs-Appellants.
Newman & Oliveaux by Trey N. McGee, Todd G. Newman, Monroe, for Defendants-Appellees, Vince Hodnett and Comet Entertainment.
*85 McNew, King, Mills, Burch & Landry by Brady D. King, II, Monroe, for Defendants-Appellees, Sixth Street Properties.
Nelson, Zentner, Sartor & Snellings by George M. Snellings, IV, Allison M. Jarrell, Monroe, for Defendants-Appellees, Peters Family Urban Properties, et al.
Mayer, Smith & Roberts by J. Kris Jackson, Steven E. Soileau, Shreveport, for Defendant-Appellee Colony Insurance Company.
Before GASKINS, DREW and LOLLEY, JJ.
GASKINS, J.
The plaintiffs, Clifton Straughter and Randall Harris, appeal from various trial court rulings in favor of Colony Insurance Company, Sixth Street Properties, Inc., Peters Family Urban Properties, LLC, and Osprey Properties, LLC, dismissing claims arising from an assault and battery. For the following reasons, we affirm the trial court judgment.

FACTS
In April 2005, the plaintiffs, Clifton Straughter and Randall Harris, were patrons at Banana Bob's Cantina in Monroe, Louisiana. They claim they were attacked inside the bar and stabbed by another patron, Nicholas Short. In their original petition, Straughter and Harris filed suit against Short, as well as the bar operator, Vince Hodnett d/b/a Banana Bob's. They alleged that Hodnett was negligent in allowing a dangerous weapon in the club, in allowing bad conduct in the bar, and in failing to have sufficient security.
The plaintiffs filed a first supplemental and amending petition naming as defendants not only Short, the attacker, and Hodnett d/b/a Banana Bob's, but also Comet Entertainment, Inc., an entity connected with Hodnett that operated Banana Bob's (Hodnett/Comet). In addition, the plaintiffs named as a defendant Colony Insurance Company (Colony), the insurer of Hodnett and Banana Bob's. Colony answered, claiming that its policy excluded damages arising out of assault and battery. In November 2005, Colony also filed a motion for summary judgment, claiming that the assault and battery exclusion precluded coverage.
In May 2006, the plaintiffs filed a second supplemental and amending petition reiterating their prior claims and adding as defendants the owner of the building leased to Banana Bob's, Sixth Street Properties, Inc. (Sixth Street); the owners of a parking lot used by the business, Peters Family Urban Properties, LLC, and Osprey Properties, LLC (Peters/Osprey); and Colony Insurance Company (Colony), as the insurer of all defendants except Short. The plaintiffs claimed that Sixth Street and Peters/Osprey were additional insureds under Colony's policy. In addition to their negligence claims, the plaintiffs asserted that the defendants were liable for allowing the operation of a public nuisance on the property. They contended that the defendants were aware of ongoing problems with criminal behavior at Banana Bob's. The plaintiffs also alleged that Peters/Osprey and Sixth Street agreed to market the building and the parking lot together in order to allow a lessee such as Banana Bob's to have enough parking to satisfy city ordinances for operation of a club.
Colony filed a second motion for summary judgment, alleging that the assault and battery exclusion in its policy precluded coverage for all of the claims against all of the defendants.
On May 17, 2006, the trial court granted the first motion for summary judgment in favor of Colony, dismissing only the claims *86 against the insurance company set forth in the original and first amending petitions. Essentially, Colony was dismissed regarding the negligence claims against Hodnett/Comet.
On June 22, 2006, Peters/Osprey filed a motion for summary judgment claiming that they do not own or have any interest in the building occupied by Banana Bob's. They stated that they own the parking lot adjacent to the business and leased it to Banana Bob's. Peters/Osprey noted that the incident occurred inside the building and not in the parking lot. Therefore, they argued that they were not liable to the plaintiffs.
In September 2006, Sixth Street filed an exception of no cause of action, arguing that the plaintiffs failed to allege that Sixth Street actively managed Banana Bob's. Sixth Street asserted that it owed no duty to the plaintiffs.
On February 21, 2007, the plaintiffs filed a motion to stay the proceedings claiming that Hodnett had filed for bankruptcy.[1]
The trial court held a hearing on the second motion for summary judgment by Colony, the motion for summary judgment by Peters/Osprey, and the exception of no cause of action by Sixth Street. On March 5, 2007, the trial court denied the motion for summary judgment filed by Colony. The court granted summary judgment in favor of Peters/Osprey and sustained the exception of no cause of action in favor of Sixth Street, dismissing those entities from the case. On March 28, 2007, the trial court signed a judgment dismissing Colony as to claims related to Peters/Osprey and Sixth Street.
This appeal by the plaintiffs includes the motion for summary judgment in favor of Peters/Osprey and the exception of no cause of action, dismissing Sixth Street, signed by the trial court on March 5, 2007 as well as the judgment of dismissal in favor of Colony signed March 28, 2007.[2]
Peters/Osprey answered the appeal, claiming that it is frivolous and seeking damages.
During the course of these proceedings in the trial court, the plaintiffs filed a rule to show cause why the ruling of May 17, 2006, granting summary judgment in favor of Colony, should not be reconsidered and reversed. The plaintiffs claimed that they had only recently discovered that the insurance policy was not delivered to the parties and the assault and battery exclusion was ineffective without delivery. The plaintiffs contended that the granting of the motion for summary judgment was a non-appealable partial judgment and therefore, the trial court retained jurisdiction to review the ruling.
On January 23, 2007, the trial court made an ex parte ruling denying the request that the summary judgment be reconsidered and reversed. The court stated that the trial court did not have authority to grant a new trial on this matter. The plaintiffs filed a notice of *87 intent to seek supervisory review of the denial of the rule to show cause and a return date was set. However, the plaintiffs failed to file a writ application.
The plaintiffs filed a separate lawsuit contending that the trial court should nullify the May 17, 2006 partial summary judgment due to fraud and ill practices. They based this claim on the alleged nondelivery of the insurance policy to all insureds. Colony filed an exception of no cause of action and a motion for summary judgment arguing that the plaintiffs had ample time to discover the nondelivery issue. Colony also alleged that the plaintiffs failed to timely file their motion for reconsideration. On July 25, 2007, the trial court granted the exception of no cause of action and the motion for summary judgment in favor of Colony. The plaintiffs appealed this ruling and the two cases were consolidated on appeal by this court.[3]

DELIVERY OF POLICY AND PARTIAL SUMMARY JUDGMENT
In its first two assignments of error in Straughter I, the plaintiffs object to the trial court's refusal to reconsider the May 17, 2006, summary judgment in favor of Colony. This summary judgment dismissed the insurance company regarding the negligence claims against Hodnett/Comet on the basis of the assault and battery exclusion in the insurance policy. The plaintiffs argue that an insurance company has a legal obligation to clearly and explicitly identify coverage limitations and exclusions to its insureds and a legal obligation to deliver the policy to its insureds within a reasonable time after issuance. In the absence of policy delivery or other written notification, the plaintiffs claim that the limitations and exclusions in the policy are without effect. According to the plaintiffs, there was no delivery of the policy to any of the insureds. Therefore, they argue that Colony's assault and battery exclusion was not applicable, and the trial court erred in granting summary judgment to Colony as to the negligence claims against Hodnett founded on the policy exclusion.
The plaintiffs also contend that the partial summary judgment rendered on May 17, 2006, was not appealable under La. C.C.P. art. 1915. They claim that the judgment only disposed of the issue of Colony's coverage of the negligence claim against Hodnett/Comet. According to the plaintiffs, Colony remained a defendant as to the nuisance claims against Hodnett/Comet and as to the negligence and nuisance claims against all the other defendants. Because the summary judgment disposed of less than all the issues regarding Colony, the plaintiffs maintain that it was a non-appealable partial summary judgment and the trial court retained jurisdiction to rule on their timely motion for reconsideration. For the following reasons, we find that these arguments are not properly before us for decision.

Discussion
Every policy of insurance shall be delivered to the insured or the person entitled thereto within a reasonable period of time after its issuance. La. R.S. 22:634(A). We recognize the rule that insurance policy exclusions are not valid unless they are clearly communicated to the insured. Notice of any exclusionary provisions is essential because the insured will otherwise assume the desired coverage exists. Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's of London, 616 So.2d 1250 (La.1993); Sims v. Insurance Unlimited of West Monroe, 28,234 (La.App.2d Cir.2/28/96), 669 So.2d *88 709, writ denied, 96-0785 (La.5/3/96), 672 So.2d 689. If an insurer fails to comply with the statutory requirement of delivery, it cannot rely on its policy exclusions. Naquin v. Fortson, 1999-2984 (La.App. 1st Cir.12/22/00), 774 So.2d 1277.
In this case, the plaintiffs claim that several months after the summary judgment was rendered, dismissing Colony regarding the negligence claims against Hodnett/Comet, they learned of the possibility that the policy was not delivered to the insureds. Approximately eight months after that decision, the plaintiffs filed a rule to show cause why the partial summary judgment should not be reversed.
We also recognize that the trial court's May 17, 2006, decision was a partial summary judgment that was not appealable. Under La. C.C.P. art. 1915(B), the trial court could have reversed its decision had it chosen to do so. Instead, on January 23, 2007, the trial court denied the request to reconsider and reverse the motion for summary judgment. Without exploring whether the January 23, 2007, judgment was a partial final judgment, we note that it was subject to review, either by appeal or by writ application. The plaintiffs did not seek review of this judgment by any means.
In Straughter I, the plaintiffs obtained the following order for the instant appeal specifying the trial court's rulings to be considered on appeal:
CONSIDERING THE ABOVE AND FOREGOING MOTION, Let Plaintiffs, CLIFTON STRAUGHTER and RANDALL HARRIS, be granted a devolutive appeal from the Judgment on the Motion for Summary Judgment in favor of Defendants, PETERS FAMILY URBAN PROPERTIES, L.L.C. and OSPREY PROPERTIES, L.L.C. and from the Judgment on the Exception of No Cause of Action in favor of SIXTH STREET PROPERTIES, INC., in the above entitled and numbered cause, rendered at Monroe, Ouachita Parish, Louisiana on the 21st day of February, 2007, and signed on the 5th day of March 2007, and the Judgment in favor of dismissal of COLONY INSURANCE COMPANY rendered on March 2, 2007 and signed on March 28, 2007, returnable to the Second Circuit Court of Appeal for the State of Louisiana. In accord with La. C.C.P. art. 2125 30 days from the date estimated costs are paid. [Emphasis supplied.]
As to Colony, this appeal only includes the granting of the summary judgment which dismissed Colony as insurer of Sixth Street and Peters/Osprey. This order does not include the May 17, 2006 summary judgment or the January 23, 2007 judgment declining the request to reverse the summary judgment. As noted earlier, the plaintiffs filed a notice of intent to seek supervisory writs from the January 23, 2007 judgment and a return date was set; the plaintiffs failed to file a writ application. In Straughter I, the plaintiffs have simply failed to properly present for review the trial court ruling regarding the denial of the request to reconsider and reverse the motion for summary judgment in favor of Colony. Their arguments are not properly before the court and will not be considered. However, as discussed below, the plaintiffs filed a separate suit attacking the May 17, 2006, summary judgment, claiming it should be nullified; they have properly appealed from the denial of their claims in that suit.

FRAUD AND ILL PRACTICES
In Straughter II, the plaintiffs filed a separate suit claiming that the trial court erred in dismissing their petition to reverse the May 17, 2006 partial summary judgment. (The May 17, 2006 summary *89 judgment in favor of Colony dismissed claims against the insurance company regarding coverage of Hodnett/Comet based on the assault and battery exclusion.) The new suit seeking to nullify the judgment was filed May 17, 2007. The plaintiffs claimed that the summary judgment in favor of Colony was improvidently granted because the plaintiffs and the court were unaware of the issue of nondelivery of the insurance policy which would void the assault and battery exclusion. They claimed to have learned of this issue while deposing the insureds after the summary judgment was granted. They pointed out that they sought to have the trial court reconsider and reverse the prior judgment, but the court refused.
In response to the plaintiffs' claims, Colony filed an exception of no cause of action and a motion for summary judgment. Colony urged that only judgments obtained by fraud or ill practices can be annulled and that the plaintiffs failed to allege any fraud or ill practices on the part of the insurance company. Therefore, Colony asserted that the plaintiffs failed to state a cause of action. Further, Colony claimed that the plaintiffs had sufficient time between the filing of the first motion for summary judgment on behalf of Colony and the granting of the judgment to discover whatever issues or facts were pertinent to their cause of action. Colony claimed there was no showing of fraud or ill practices and that summary judgment should be granted in its favor.
The judgment signed on July 25, 2007, by the trial court states that it sustained the exception of no cause of action and granted the motion for summary judgment.
The plaintiffs appealed, claiming that the failure to consider the nondelivery issue and the failure to overturn the May 17, 2006 summary judgment in favor of Colony deprived the plaintiffs of a legal right and made the enforcement of the judgment inequitable.

Discussion
The nullity of a final judgment may be demanded for vices of either form or substance. La. C.C.P. art.2001. Vices of form are governed by La. C.C.P.2002 and are not applicable to this case. The only ground possibly available to the plaintiffs to nullify the May 17, 2006 judgment is a vice of substance. Vices of substance are governed by La. C.C.P. art.2004 which provides in pertinent part:
A. A final judgment obtained by fraud or ill practices may be annulled.
B. An action to annul a judgment on these grounds must be brought within one year of the discovery by the plaintiff in the nullity action of the fraud or ill practices.
Trial courts are permitted discretion in deciding when a judgment should be annulled because of fraud or ill practices, to which discretion reviewing courts will defer. Wright v. Louisiana Power & Light, XXXX-XXXX (La.3/9/07), 951 So.2d 1058; Johnson v. Unopened Succession of Alfred Covington, Jr. 42,488 (La.App.2d Cir.10/31/07), 969 So.2d 733. The historical development of this provision established the following criteria for an action in nullity: (1) that the circumstances under which the judgment was rendered showed the deprivation of legal rights of the litigant seeking relief, and (2) that the enforcement of the judgment would have been unconscionable and inequitable. The Louisiana Supreme Court has accepted those two requirements as the necessary elements in establishing a nullity action under La. C.C.P. art.2004. Gladstone v. American Automobile Association, Inc., 419 So.2d 1219 (La.1982); Wright v. Louisiana Power & Light, supra.
*90 La. C.C.P. art.2004 is not limited to cases of actual fraud or intentional wrongdoing, but is sufficiently broad to encompass some improper practice or procedure which operates, even innocently, to deprive the party cast in judgment of some legal right, and where the enforcement of the judgment would be unconscionable and inequitable. Wright v. Louisiana Power & Light, supra.
"Deprivation of legal rights" is conduct which prevents an opposing party from having an opportunity to appear or present a defense. The right to a fair and impartial trial is a legal right afforded to all participants in a legal proceeding. Wright v. Louisiana Power & Light, supra.
An action for nullity is not intended as a substitute for an appeal or as a second chance to prove a claim that was previously denied for failure of proof. The purpose of an action for nullity is to prevent injustice which cannot be corrected through new trials and appeals. Wright v. Louisiana Power & Light, supra.
Discovery of evidence which could have been presented at the original trial usually cannot serve as the basis for an action for nullity. Gladstone v. American Automobile Association, Inc., supra; Wright v. Louisiana Power & Light, supra. Furthermore, even if a new witness is not discovered until after the judgment becomes final, despite the exercise of due diligence, that fact is not grounds for nullity of judgment unless fraud was involved or unless the enforcement of the judgment would be inequitable and unconscionable. Otherwise, the finality of judgments would be seriously impaired. Gladstone v. American Automobile Association, Inc., supra.
Appellate courts review summary judgments de novo under the same criteria that govern a district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Costello v. Hardy, XXXX-XXXX (La.1/21/04), 864 So.2d 129. A court must grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2); Mosley v. Temple Baptist Church of Ruston, Louisiana, Inc., 40,546 (La.App.2d Cir.1/25/06), 920 So.2d 355.
Initially, the movant bears the burden of proof. La. C.C.P. art. 966(C)(2). If the movant successfully meets this burden, then the burden shifts to the other party to present factual support adequate to establish that he/she will be able to satisfy the evidentiary burden at trial. If the other party fails to meet this burden, there is no genuine issue of material fact, and the movant is entitled to summary judgment as a matter of law. Supreme Services and Specialty Co., Inc. v. Sonny Greer, Inc., XXXX-XXXX (La.5/22/07), 958 So.2d 634.
The party opposing summary judgment cannot rest on the mere allegations or denials in his pleadings, but must show that he has evidence which, if believed, could satisfy his evidentiary burden of proof at trial. If he has no such evidence, then there is no genuine issue of material fact, and the movant is entitled to summary judgment. La. C.C.P. art. 966(C)(2); Mosley v. Temple Baptist Church of Ruston, Louisiana, Inc., supra.
*91 The plaintiffs did not submit any evidence that the insurance policy had not been delivered to Hodnett/Comet. The trial court did not err in granting Colony's motion for summary judgment in Straughter II. The pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits show that there was no genuine issue of material fact regarding the plaintiffs' request to nullify the May 17, 2006 judgment. We pretermit any discussion on the no cause of action exception due to our finding that the summary judgment was properly granted.[4]

LIABILITY OF LESSORS
The plaintiffs argue that premises lessors can be held liable for an assault in a bar when the bar is being operated as a public nuisance and the lessors are on notice of that fact. They claim that Sixth Street and Peters/Osprey were on notice that the bar was being operated as a public nuisance and they failed to exercise their authority to terminate the lease under the public morals clause of the lease.
The plaintiffs acknowledge that Peters/Osprey leased only the parking lot and that the stabbing occurred inside the building. However, they argue that the agreement between Sixth Street and Peters/Osprey was a package deal for the lease of the building and the parking lot for operation of a single business. Without this cooperation, the business could not have operated. These arguments are without merit.

Discussion
The plaintiffs alleged that Sixth Street and Peters/Osprey were liable because they allowed a nuisance to operate on their property which resulted in injury to the plaintiffs. In the present case, although the plaintiffs seek to expand their cause of action to include Sixth Street and Peters/Osprey on a claim of allowing a nuisance to operate on the property, what is actually alleged is that these defendants were negligent and breached a duty owed to the plaintiffs.
A threshold issue in any negligence action is whether the defendant owed the plaintiff a duty. Whether a duty is owed is a question of law. Whether a legal duty is owed by one party to another depends on the facts and circumstances of the case and the relationship of the parties. Beck v. Schrum, 41,647 (La.App.2d Cir.11/1/06), 942 So.2d 669.
Although the owner or operator of a facility has the general duty to exercise reasonable care for the safety of persons on his premises and the duty not to expose such persons to unreasonable risks of injury or harm, this duty does not extend to unforeseeable or unanticipated criminal acts by third persons. While a business operator may have a duty to guard against the predictable risk of assaults, no jurisprudence has extended that duty to lessors. See Ledet v. Doe, 00-112 (La.App. 5th Cir.5/17/00), 762 So.2d 242. See also Patton v. Strogen, 39,829 (La.App.2d Cir.8/17/05), 908 So.2d 1282.
Even an owner who operates a club is not liable for injuries occurring on adjacent property unless certain factors are present such as inviting patrons to use that property or where the property provides a means of access to the business premises. Ledet v. Doe, supra. Lessors who have no responsibility for the operation *92 of a business or a parking lot have a lesser duty than that of an owner/operator.
The duty of lessors to third parties is usually found in the ambit of premises defects and not in some obscure negligent leasing theory. The plaintiffs have simply failed to clearly articulate what duty they perceive was owed by Sixth Street and Peters/Osprey. If the plaintiffs contend that these parties had a duty not to lease the property to Banana Bob's to begin with, then that argument must fall. At the time the lease was confected, there was no reasonably foreseeable risk that these plaintiffs would be harmed by the criminal act of a third party on the premises. Further, there was no clear showing that Sixth Street or Peters/Osprey had a duty to terminate the lease. This incident occurred during the term of the lease. Our examination of that document does not reveal a public morals clause as argued by the plaintiffs. Under La. R.S. 9:3221, Hodnett/Comet assumed all responsibility for liability arising out of the operation of the business.
La. R.S. 9:3221 provides in pertinent part:
[T]he owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
The lease contained a "hold harmless" clause whereby the operator of Banana Bob's agreed to assume the responsibility for the condition of the property and to hold Sixth Street and Peters/Osprey harmless from any claims arising from the use of the property. The lease specifies:
LESSEE hereby assumes responsibility for condition of the leased premises as contemplated under R.S. 9:3221.
Sixth Street was released on an exception of no cause of action. Even though Sixth Street owned the building, there was no allegation that the entity was operating the bar. See and compare Adams v. Traina, 36,306 (La.App.2d Cir.10/25/02), 830 So.2d 526, writs denied, 2002-2844 (La.2/7/03), 836 So.2d 101, 2002-2898 (La.2/7/03), 836 So.2d 102. Further, there were insufficient allegations that Sixth Street was the cause of the alleged public nuisance or that Short was an agent or employee of Banana Bob's. There was also no specific allegation of a duty owed by Sixth Street to protect against the risk encountered by the plaintiffs. The trial court did not err in sustaining the exception of no cause of action in favor of Sixth Street.[5]
Also, the trial court did not err in granting summary judgment in favor of Peters/Osprey. In their brief, the plaintiffs argue that a landowner who allows a *93 public or private nuisance to operate on his premises may be liable to third parties. None of the authority cited by the plaintiffs supports a finding that Peters/Osprey, the lessors of the parking lot across the street from Banana Bob's, should be liable to the plaintiffs.[6]
In the present case, the plaintiffs were inside the building leased to Banana Bob's when they were injured. They were not on the parking lot owned by Peters/Osprey at the time of the injury and there were no allegations that the condition of the parking lot led to the injuries sustained. Hodnett/Comet assumed responsibility for security and all other aspects of duty connected with operating Banana Bob's. Under these facts, there was nothing Peters/Osprey could have done to prevent the harm incurred by the plaintiffs inside the club. The plaintiffs' damages were caused by the criminal actions of Short in striking and stabbing them. These defendants simply did not owe a duty to the plaintiffs to protect them from criminal acts committed by third parties on adjacent property. In Ledet v. Doe, supra, an owner/operator was not liable for this type of claim. In this case, the lessors' duty is more attenuated. Where the injuries were not sustained in the parking lot, no condition of the parking lot led to the injuries, and the operator of the club assumed the responsibility for injuries occurring on the property, we find that the trial court did not err in granting summary judgment in favor of Peters/Osprey.

POLICY EXCLUSION AND NUISANCE CLAIM
The plaintiffs next argue that, assuming that the assault and battery exclusion in the insurance policy is enforceable against Hodnett/Comet, Peters/Osprey, and/or Sixth Street in the absence of delivery, the exclusion does not contain any reference to nuisance claims and does not specifically exclude nuisance claims. This argument is without merit.

Discussion
Our review of the insurance policy shows that the assault and battery exclusion is sufficiently broad to cover the nuisance claim the plaintiffs have attempted to raise in this case.
Interpretation of an insurance policy usually involves a legal question which can be resolved properly in the framework of a motion for summary judgment. Huggins v. Gerry Lane Enterprises, Inc., 2006-2816, 2006-2843 (La.5/22/07), 957 So.2d 127. An insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Civil Code. The judicial responsibility in interpreting insurance contracts is to determine the parties' common intent. La. C.C. art.2045; Huggins v. Gerry Lane Enterprises, Inc., supra. Words and phrases used in an insurance policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. La. C.C. art.2047; Huggins v. Gerry Lane Enterprises, Inc.
An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably *94 contemplated by its terms or so as to achieve an absurd conclusion. Unless a policy conflicts with statutory provisions or public policy, it may limit an insurer's liability and impose and enforce reasonable conditions upon the policy obligations the insurer contractually assumes. Huggins v. Gerry Lane Enterprises, Inc., supra.
If, after applying the other general rules of construction, an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer and in favor of coverage. Under this rule of strict construction, equivocal provisions seeking to narrow an insurer's obligation are strictly construed against the insurer. That strict construction principle, however, is subject to exceptions. One of these exceptions is that the strict construction rule applies only if the ambiguous policy provision is susceptible to two or more reasonable interpretations. For the rule of strict construction to apply, the insurance policy must be not only susceptible to two or more interpretations, but each of the alternative interpretations must be reasonable. Huggins v. Gerry Lane Enterprises, Inc., supra.
The assault and battery exclusion in this case provides as follows:
This insurance does not apply to damages or expenses due to "bodily injury," "property damage" or "personal or advertising injury" arising out of or resulting from:
(1) Assault and Battery committed by any person;
(2) The failure to suppress or prevent assault and battery by any person;
(3) The failure to provide an environment safe from assault and battery or failure to warn of the dangers of the environment which could contribute to assault and battery;
(4) The negligent hiring, supervision, or training of any person;
(5) The use of any force to protect persons or property whether or not the "bodily injury" or "property damage" was intended from the standpoint of the insured or committed by or at the direction of the insured.
The language of the assault and battery exclusion is sufficiently broad to exclude coverage for the alleged nuisance claims urged by the plaintiffs. Those claims fall under those parts of the exclusion denying coverage for the failure to suppress or prevent assault and battery or to provide a safe environment from assault and battery or failure to warn of the dangers of the environment which could contribute to assault and battery. This is the type of harm that the plaintiffs claim constitutes maintaining a nuisance on the property. The plaintiffs' arguments to the contrary are without merit.

FRIVOLOUS APPEAL
Peters/Osprey argues that the trial court correctly granted summary judgment in their favor because they only owned the parking lot of Banana Bob's and the incident in this case occurred inside the building they did not own. Peters/Osprey argues that it did not have a duty to protect against the harm encountered in this case. They allege that the appeal by the plaintiffs is frivolous and that they should be awarded damages for defending against this frivolous appeal. This argument is without merit.

Discussion
La. C.C.P. art. 2164 specifies that the appellate court may award damages for a frivolous appeal. This provision is penal in nature and is to be strictly construed. Pratt v. Louisiana State Medical Center in Shreveport, 41,971 (La. App.2d Cir.2/28/07), 953 So.2d 876. An appeal will not be deemed frivolous unless *95 it is taken solely for delay, fails to raise a serious legal question, or counsel does not seriously believe in the proposition of law he is advancing. Appeals are favored and appellate courts are reluctant to impose damages for frivolous appeals. On those rare occasions when such damages are awarded, the amounts are modest and may consist of an amount representing a reasonable attorney fee award for answering and defending the appeal. Pratt v. Louisiana State Medical Center in Shreveport, supra.
The record does not show that this appeal was taken solely for delay or that the plaintiffs did not seriously believe in their position. Damages for frivolous appeal are not warranted.

CONCLUSION
For the reasons stated above, we affirm the trial court judgment in all respects. Costs in this court are assessed to the plaintiffs.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, GASKINS, CARAWAY, DREW and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] In the trial court, Mr. Hodnett filed a motion for summary judgment urging that he is not the owner of Banana Bob's. He asserted that the business was owned by Comet Entertainment, Inc., and that he is the sole shareholder thereof. This motion was not ruled upon by the trial court. Mr. Hodnett's attorney filed a letter in this matter stating that his client is not involved in the issues raised in this appeal and would not be filing a brief. He also states that Mr. Hodnett has recently declared bankruptcy and should be severed from this matter at the trial and appellate court levels. We find that no decision is required because the issues decided in this appeal do not include any judgments against Mr. Hodnett.
[2] For ease of reference, this appeal will be referred to as Straughter I.
[3] This appeal will be referred to as Straughter II.
[4] The insurance policy shows that the named insured was Comet Entertainment d/b/a Banana Bob's Cantina. Additional insureds under the policy were Peters/Osprey and Sixth Street. That the insurance policy may not have been delivered to the additional insureds does not prove that the named insured did not receive a copy.
[5] Bibbins v. City of New Orleans, XXXX-XXXX (La.App. 4th Cir.5/21/03), 848 So.2d 686, writ denied, XXXX-XXXX (La. 10/10/03), 855 So.2d 357, is somewhat instructive. In Bibbins, the Alcohol Beverage Control (ABC) Board sought to revoke the liquor license of a club. The ABC Board claimed that the club was operating in a manner that permitted disturbing the peace and/or created or maintained a public nuisance. The club filed exceptions of vagueness and no cause of action. Although the ABC Board attached police reports to its petition, the fourth circuit found that the petition failed to state how the club was the cause of the disturbance of the peace or the existence of a nuisance regarding an attempted murder and a murder which occurred outside the club. According to the fourth circuit, criminal charges were brought against specific individuals who were not agents or employees of the club. The fourth circuit held that the petition in that case failed to state a cause of action for public nuisance.
[6] City of Gretna v. Russland Enterprises, Inc., 564 So.2d 367 (La.App. 5th Cir. 1990), writ denied, 568 So.2d 1078 (La.1990), held that La. R.S. 13:4711 et seq., dealing with abatement of nuisances, was not unconstitutional; Adams v. Traina, supra, dealt with a negligence claim, not a nuisance claim.